IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JOSE ABEL TOVAR HERNANDEZ JR., an individual, | No. 3:21-cv-01794-HZ |
| | OPINION & ORDER |
| Plaintiff, | |
| v. | |
| UNITED STATES OF AMERICA, NORTHERN OREGON CORRECTIONS, an intergovernmental corrections entity doing business as NORCOR, WASHINGTON COUNTY, and DOES 1-10, | |
| Defendants. | |

Amy Edwards
Jacob C. Goldberg
Stoel Rives LLP
760 S.W. Ninth Ave., Suite 3000
Portland, OR 97205

Kelly K. Simon
ACLU of Oregon
P.O. Box 40585
Portland, OR 97240

    Attorneys for Plaintiff

1 – OPINION & ORDER

Sarah Feldman
U.S. Attorney's Office
1000 SW Third Avenue, Ste 600
Portland, OR 97204

    Attorney for Defendant United States of America

Lauren E Nweze
William E Stabler
David C. Lewis
Kraemer & Lewis
P.O. Box 1469
Lake Oswego, OR 97035

    Attorneys for Defendant NORCOR

Eamon P. McMahon
Washington County Counsel
155 N First Ave, Suite 340, MS#24
Hillsboro, OR 97124

    Attorney for Defendant Washington County

HERNÁNDEZ, District Judge:

Plaintiff Jose Abel Tovar Hernandez Jr. brings claims for false arrest/false imprisonment, negligence per se, intentional or negligent infliction of emotional distress, and Fourth Amendment claims against the United State of America, Northern Oregon Corrections (NORCOR), Washington County, and Does 1-10. Defendant Washington County moves to dismiss all claims against it. For the reasons that follow, the Court grants in part and denies in part Defendant's motion.

## BACKGROUND

Plaintiff is a naturalized United States citizen who has lived in the U.S. since he was 10 months old. Compl. ¶¶ 16, 19, ECF 1. On March 7, 2020, Plaintiff was serving a sentence on a parole violation in Washington County Jail. Compl. ¶ 21. He is houseless and was picked up by

2 – OPINION & ORDER

law enforcement after stealing a pair of socks from a retail store. *Id.* On the morning of his release, officials of Defendant Washington County woke Plaintiff up and told him he "would be free to go." Comp. ¶ 22. A deputy told Plaintiff that someone was there to pick him up. Compl. ¶ 23. When Plaintiff asked who it was, assuming it was his mother, the deputy responded, "you'll see." *Id.* [1] Defendant Washington County officials then removed Plaintiff's handcuffs and released him into the jail's sally port, rather than through the normal exit. Compl. ¶¶ 22–23. Three U.S. Immigration and Custom Enforcement ("ICE") officers were waiting for Plaintiff in the sally port. Compl. ¶ 25. The officers asked his name and then arrested Plaintiff without verifying his immigration status. *Id.* Plaintiff repeatedly told the ICE officers that he was a U.S. citizen. *Id.*

Plaintiff was then taken to NORCOR, a correctional facility in The Dalles, Oregon, and was held for over two days. Compl. ¶¶ 32–33. Plaintiff was released from NORCOR after an immigration attorney contacted ICE and informed them that he is a naturalized legal citizen. Compl. ¶ 38. Plaintiff alleges Defendant Washington County notified ICE officials of his impending release and "released him to ICE custody according to a policy and practice of collaborating with ICE and relying on his racial profile, hispanic surname, and other information, which has been shown to be inaccurate." Compl. ¶ 27.

Plaintiff filed this action on December 10, 2021. Plaintiff brings claims for false arrest/false imprisonment against Defendant ICE under the Federal Tort Claims Act (FTCA) and against Defendants Washington County and NORCOR under the Oregon Tort Claims Act

---

[1] Plaintiff alleges that his mother, her husband, and his brother-in-law were waiting for him at the entrance to the jail. ¶ 24. He alleges that after waiting for a long time, Defendant Washington County told them Plaintiff had been detained by ICE and that they needed to go to "a federal building in downtown Portland" to see him. Compl. ¶ 24.

3 – OPINION & ORDER

(OTCA). He brings claims for negligence per se against Defendant United States under the FTCA and against Defendants ICE, Washington County, and NORCOR under the OTCA. He brings claims for Intentional or Negligent Infliction of Emotional Distress against Defendants ICE, Washington County, and NORCOR under the FTCA and the OTCA. He brings Fourth Amendment Bivens claims against Individual ICE Officers for unreasonable seizure. Finally, he brings Fourth and Fourteenth Amendment Section 1983 claims against Defendants Washington County and NORCOR for unreasonable seizure and deprivation of due process. Defendant Washington County moves to dismiss all claims against it. Def. Mot., ECF 6.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id. at 679*.

## DISCUSSION

Plaintiff brings five claims for relief against Defendant Washington County: (1) False Imprisonment/False Arrest; (2) Intentional Infliction of Emotional Distress (IIED); (3) Negligent Infliction of Emotional Distress (NIED); (4) § 1983 Fourth Amendment violation; and (5) Negligence Per Se. Defendant Washington County moves to dismiss all claims against it.

Plaintiff plausibly alleges Defendant Washington County instigated and assisted in his detention in the sally port. The Court thus denies the motion to dismiss his claims for false imprisonment and IIED. The Court grants the motion to dismiss Plaintiff's NIED and negligence per se claims because he has not shown that his relationship to Defendant supports a negligence claim based on a non-physical injury or that ORS 181A.820 can be used to establish negligence per se liability. The Court also grants the motion to dismiss Plaintiff's § 1983 claim, as he fails to establish a theory of liability under the Fourth Amendment on these facts.

### I.     False Imprisonment

Defendant Washington County moves to dismiss Plaintiff's claim for false imprisonment arguing his claim did not accrue until Plaintiff left Defendant's custody. Plaintiff responds that his claim is based on the time he was confined in the sally port of Washington County Jail and that Defendant should be liable because it instigated and assisted in his false arrest.

The "gravamen" of a claim for false imprisonment (also called false arrest) is "the unlawful imposition of restraint on another's freedom of movement*." Hiber v. Creditors*

*Collection Serv. of Lincoln Cty., Inc.*, 154 Or. App. 408, 413, 961 P.2d 898, 901 (1998) (quoting *Buckel v. Nunn*, 133 Or.App. 399, 405, 891 P.2d 16, 21 (1995)). The elements of false imprisonment are: "(1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful." *Id.* (citations omitted). "The defendant 'must only intend to accomplish the act that causes confinement; they need not intend the confinement to be unlawful.'" *Carr v. City of Hillsboro*, 497 F. Supp. 2d 1197, 1211 (D. Or. 2007) (quoting *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1479 (9th Cir.1992)).

A defendant may be held liable for directly confining a plaintiff and for instigating the confinement "by directing, requesting, inviting or encouraging it." *Id.* (citing *Pearson v. Galvin*, 253 Or. 331, 335–37, 454 P.2d 638 (1969)). "The plaintiff is not required to prove that the defendant was the sole, or exclusive, instigator of his arrest, but that the defendant participated by taking an active part in bringing about the arrest." *Pearson*, 253 Or. at 337.

Drawing all reasonable inferences in his favor, Plaintiff plausibly alleges a claim for false imprisonment based on the instigation of the false arrest in the jail's sally port. Plaintiff alleges Defendant Washington County notified ICE officials of his impending release because of his "racial profile, Hispanic surname, and other information." Compl. ¶ 27. He alleges that rather than take him through the normal exit where his family was waiting, Defendant's deputies took him to the jail's sally port. A sally port is "a secure entryway (as at a prison) that consists of a series of doors or gates." Sally port Definition, Merriam–Webster.com, http://www.merriamebster.com/dictionary/sally% 20port (last visited April 5, 2022). Despite being told he was released from Defendant's custody, once in the sally port Plaintiff was unable to leave. Compl. ¶¶ 22–25. In the sally port he was met by three ICE officers who proceeded to

arrest him despite his protests that he was a U.S. citizen. Compl. ¶ 25. He alleges that Defendant Washington County knew ICE officials were waiting for him. Compl. ¶ 23.

Instigation of a false imprisonment or arrest "consists of words or acts which direct, request, invite or encourage the false imprisonment itself.'" *Pearson*, 253 Or. at 335 (quoting Restatement (Second) of Torts § 45A cmt. c). Plaintiff plausibly alleges Defendant Washington County invited and encouraged the false arrest by contacting ICE based on his racial identity and last name. From Plaintiff's allegation, it is also reasonable to infer Defendant Washington County assisted in his arrest by allowing ICE officials to enter a secured portion of the jail where it knew Plaintiff would be unable to leave.

That ICE officials, rather than Defendant's staff, ultimately detained Plaintiff does not defeat his claim. Plaintiff is "not required to prove that the defendant was the sole, or exclusive, instigator of his arrest, but that the defendant participated by taking an active part in bringing about the arrest." *Pearson*, 253 Or. at 337. Plaintiff plausibly alleges that Defendant Washington County took an "active part" in bringing about his arrest. *Id.* Defendant also did more than simply give information to another law enforcement body, it participated in the false imprisonment by requiring Plaintiff to exit through the sally port and allegedly coordinating his arrest by ICE officials. *See Pearson v. Galvin*, 253 Or. at 335, 454 P.2d at 640 (quoting Restatement (Second) of Torts s 45A, Comment c). ("It is not enough for instigation that the actor has given information to the police about the commission of a crime"). Plaintiff plausibly alleges a claim against Defendant Washington County for false imprisonment. The Court denies Defendant's motion to dismiss Plaintiff's claim.

//

//

7 – OPINION & ORDER

**II.     Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress**

Defendant Washington County moves to dismiss Plaintiff's claims for intentional and negligent infliction of emotional distress. On both claims, Defendant argues that the offending conduct occurred after Plaintiff was out of its custody. As discussed above, Defendant's argument does not insulate it from any potential tort liability. Plaintiff plausibly alleges that Defendant instigated and assisted in his false arrest.[2] That alleged false imprisonment/arrest is the basis for Plaintiff's IIED and NIED claims against Defendant Washington County. Compl. ¶¶ 59-60. The Court thus denies Defendant's motion to dismiss Plaintiff's IIED and NIED claims on this basis.

On the negligent infliction of emotional distress claim, Defendant Washington County argues Plaintiff cannot show it owed him a special duty. Plaintiff responds that it owed him a special duty because he was in its custody.

Typically, to state a claim for negligence, under Oregon law, the plaintiff must allege actual, physical harm. *Lowe v. Philip Morris USA, Inc.*, 207 Or. App. 532, 545, 142 P.3d 1079, 1086 (2006). Oregon courts have recognized an exception to this general rule when the defendant has a special relationship with the plaintiff that gives rise to a heightened duty of care. *See, e.g.*, *id.* at 552–53 (citing *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or. 329,

---

[2] Defendant does not argue that Plaintiff failed to state the elements of an IIED or NIED claim. For example, it does not argue that its actions were not an extraordinary transgression of the bounds of socially tolerable conduct or that it did not intend to inflict severe emotional distress. *See Babick v. Oregon Arena Corp.*, 333 Or 401, 412–413, 40 P3d 1059 (2002) (to state claim for intentional infliction of emotional distress, plaintiff must allege either that defendant desired to inflict severe emotional distress or that defendant knew that such distress was substantially certain to result from volitional act). Accordingly, the Court does not consider these arguments at the motion to dismiss stage.

8 – OPINION & ORDER

340–42, 83 P.3d 322, 327–28 (2004); *Curtis v. MRI Imaging Services II*, 148 Or.App. 607, 620 n11, 941 P.2d 602, 609 n11 (1997), aff'd 327 Or 9, 956 P.2d 960 (1998).

Here, Plaintiff has not alleged a special relationship that supports a NIED claim. Plaintiff has not identified a duty applicable in these circumstances, beyond the common law duty to exercise reasonable care to prevent foreseeable harm. Plaintiff cites *Hagler v. Coastal Farm Holdings, Inc.* for the proposition that "possessors of land must make their property reasonably safe for their invitees." 354 Or. 132, 140, 309 P.3d 1073, 1079 (2013). This duty though typically relates to discovering physical conditions that pose a risk of harm. *See Weiskopf v. Safeway Stores*, 271 Or. 630, 631, 533 P.2d 347 (1975) (discussing liability of market for injury resulting from customer slipping on substance left on a floor). Plaintiff does not explain how he would qualify as an "invitee" under Oregon law or how the risk of harm alleged here (a non-physical injury) is comparable to premises liability cases.

In other contexts, correctional facilities may have special relationships to adults in custody that modify the typical negligence duty to prevent foreseeable harm. *See Nordenstrom for Est. of Perry v. Corizon Health, Inc.*, No. 3:18-CV-01754-HZ, 2021 WL 2546275, at *21 (D. Or. June 18, 2021) (finding a jail had a special relationship with an inmate that required it to provide necessary medical aid). But Plaintiff does not explain how the jailer-inmate relationship should result in a heighted duty of care on a NIED claim on these facts. The Court thus dismisses Plaintiff's claim for NIED.[3]

---

[3] The Court notes that a plaintiff can recover for negligent infliction of emotional distress in the absence of physical injury if the "defendant's conduct infringed on some legally protected interest apart from causing the claimed distress, even when that conduct was only negligent." *Hammond v. Cent. Lane Commc'ns Ctr.*, 312 Or. 17, 23, 816 P.2d 593, 596 (1991). Plaintiff does not raise this argument in its brief or provide a case where an Oregon court has recognized the interest to be free from unreasonable seizure as a basis for a claim of negligent infliction of emotional distress.

9 – OPINION & ORDER

**III.    Fourth Amendment Unlawful Seizure**

Defendant Washington County moves to dismiss Plaintiff's § 1983 Fourth Amendment claim. Defendant contends it has no Fourth Amendment liability because it released Plaintiff. Plaintiff responds that Defendant Washington County's conduct and the circumstances as a whole constituted a seizure.

To state a § 1983 Fourth Amendment claim, plaintiff must show there was a seizure, that the person seizing the plaintiff acted intentionally, and that the seizure was unreasonable. *Brower v. Cty. of Inyo*, 489 U.S. 593, 596, 599 (1989). A person is seized if "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *United States v. Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004) (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (internal quotation marks omitted)); *see also United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (A person is seized when, "by means of physical force or a show of authority, his freedom of movement is restrained.").

As discussed above, Plaintiff plausibly alleges that a person under the circumstances surrounding his detention in the sally port would not have felt free to leave. He does not however, show that this seizure can be attributed to Defendant Washington County under Fourth Amendment law. Unlike Oregon law on false imprisonment, Plaintiff points to no theory of liability that allows a Fourth Amendment claim to stand against a law enforcement officer that indirectly assists in a seizure.

Plaintiff's strongest argument is that Defendant Washington County participated in the seizure by releasing him into the sally port—a series of locked doors. In some cases, the imposition of a physical barrier constitutes a seizure. *See United States v. Kerr*, 817 F.2d 1384,

1387 (9th Cir. 1987) (finding the defendant seized when a deputy pulled into his one lane driveway and blocked defendant's exit with his police vehicle because he had "no reasonable alternative except an encounter with the police"); United States v. Nunn, No. 14-CR-00636-TEH, 2015 WL 3764181, at *4 (N.D. Cal. June 16, 2015) (finding a seizure when three officers parked in a way that blocked defendant's vehicle and approached him in uniform). However, in these cases, the law enforcement agency or officials found liable created the barrier and participated directly in the seizure. See id. Plaintiff has not shown that there can be § 1983 individual liability for a Fourth Amendment violation where an officer allegedly helped another law enforcement agency effectuate a seizure but did not participate directly in the seizure. Perhaps more importantly, Plaintiff's allegations on the Fourth Amendment claim are directed at his multi-day detention at NORCOR, not the detention in the sally port. "Washington County and NORCOR agents acted pursuant to an official policy in transferring Mr. Tovar to ICE custody and detaining Mr. Tovar without probable cause for more than 48 hours without a judicial probable cause determination." Compl. ¶ 74.[4] Accordingly, the Court dismisses Plaintiff's Fourth Amendment claim against Defendant Washington County.

## IV.   Negligence Per Se

Defendant Washington County moves to dismiss Plaintiff's negligence per se claim arguing ORS 181A.820 cannot provide the basis for a negligence per se claim. Plaintiff contends that it can and argues he falls within the class of people ORS 181A.820 was meant to protect.

---

[4] The Court also notes that Plaintiff brings his § 1983 claim against Defendant Washington County without naming any individual officers. To state a § 1983 municipal liability claim under *Monell*, Plaintiff must allege an underlying violation by a Washington County employee. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978); *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (a *Monell* claim cannot survive without an underlying constitutional violation); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) (finding no vicarious liability under § 1983 for employees actions).

11 – OPINION & ORDER

"[N]egligence *per se* is not a separate claim for relief, but is simply shorthand for a negligence claim in which the standard of care is expressed by a statute or rule." *Abraham v. T. Henry Const., Inc.*, 350 Or. 29, 36, n.5 249 P.3d 534, 538 (2011). To establish negligence per se, a plaintiff must first show that the statute or regulation at issue establishes a standard of care. *Id.*;see also *Bellikka v. Green*, 306 Or. 630, 650, 762 P.2d 997, 1009 (1988) ("Where a statute establishes all the elements of common-law negligence, the violation of the statute can be pled as a fact to establish negligence per se."). If the relevant statute or regulation at issue establishes a standard of care, then a plaintiff may state a negligence claim by showing that (1) the defendant violated the statute or regulation; (2) the plaintiff was injured as a result of that violation; (3) the plaintiff was a member of the class of persons the statute and regulation intended to protect; and (4) the plaintiff suffered a type of injury that the statute or regulation was enacted to prevent. *Miller v. Goodyear Tire & Rubber Co.*, 434 F. Supp. 3d 877, 884 (D. Or. 2020) (citing *McAlpine v. Multnomah Cnty.*, 131 Or. App. 136, 144, 883 P.2d 869, 872 (1994)).

Plaintiff relies on ORS 181A.820 for his negligence per se theory. The relevant section of ORS 181A.820 provides: "[a] law enforcement agency may not use agency moneys, equipment or personnel for the purpose of detecting or apprehending persons for the purpose of enforcing federal immigration laws."

Defendant argues ORS 181A.820 does not create a protected class of which Plaintiff is a member and that even if he is a member, it did not violate the statute.[5] It relies heavily on *Cruz v. Multnomah Cty.* to support its position. 279 Or. App. 1, 381 P.3d 856 (2016). In *Cruz*, the Oregon Court of Appeals considered whether ORS 181A.820 provides a statutory tort. *Id.* at 19.

---

[5] Because the Court finds that Plaintiff cannot maintain a negligence per se theory of liability based on ORS 181A.820, the Court does not consider whether or not Defendant's conduct violated the statute.

Plaintiff *Cruz* was arrested for disorderly conduct and booked into Multnomah County Jail. *Id.* at 4. After he was arraigned, Defendant Multnomah County continued to hold him for "approximately 38 hours beyond the time that they otherwise would have released him." *Id.* at 5. They did so after receiving a fax from ICE requesting the jail hold plaintiff while ICE "initiated an investigation to determine whether plaintiff was subject to removal from the United States." *Id.* at 4. Plaintiff Cruz brought claims for false arrest and a violation of ORS 181A.820(1). *Id.*. In analyzing his claims, the Oregon Court of Appeals held that ORS 181A.820(1) did not "not create new statutory liability of the kind that plaintiff asserted—a statutory tort." *Id.* at 24. It found that "the legislature's intention was to reduce the potential liability of law enforcement agencies under existing law by expressly prohibiting problematic activities, and not to create additional liability through creation of a new statutory tort." *Id.* at 23. It also noted that potential plaintiffs had other forms of relief via claims for false arrest and civil rights causes of action. *Id.*

Defendant Washington County relies on *Cruz* to argue that ORS 181A.820 does not create a protected class of which Plaintiff is a member. It also argues that *Cruz* shows that the legislature's focus was to prohibit the use of state resources to enforce federal immigration law and limit state law enforcement liability. The Court agrees with Defendant.

Though *Cruz* is not dispositive of the question here, it informs the Court's analysis. *Shahtout By & Through Shahtout v. Emco Garbage Co.*, 298 Or. 598, 601, 695 P.2d 897, 899 (1985) (noting that a plaintiff may rely on a negligence per se theory of liability even when a statute does not expressly or impliedly provide a cause of action). First, as Defendant highlights, Plaintiff has not shown that ORS 181A.820 was enacted to prevent the type of injury he suffered. The text of ORS 181A.820 focuses on the use of resources. Thus, the harm it seeks to prevent is the wasting of taxpayer resources on federal immigration enforcement and legal exposure.

13 – OPINION & ORDER

Plaintiff does not allege harm based on a misuse of law enforcement resources; his alleged harm derives from the infringement of his liberty.

The Oregon Court of Appeals analysis of ORS 181A.820's legislative history in *Cruz* underpins this finding. The court found that "the legislature's intention was to reduce the potential liability of law enforcement agencies under existing law by expressly prohibiting problematic activities, and not to create additional liability through creation of a new statutory tort." *Cruz,* 279 Or. App. at 23. It did not find the purpose of ORS 181A.820 was to protect U.S. citizens from state law enforcement overreach, although that was a factor considered by the legislature. *Id.* at 22–23. The Court has independently reviewed the legislative history of ORS 181A.820 and agrees with the Oregon Court of Appeals' characterization of the legislative record. Pl. Request for Judicial Notice Ex. B, ECF 15-2.[6]

Furthermore, Plaintiff has not shown how ORS 181A.820 creates a standard of care or heightened duty beyond the normal duty to avoid an unreasonable risk of foreseeable harm. "A duty is a legal obligation that is owed or due to another and that needs to be satisfied; that which one is bound to do, and for which somebody else has a corresponding right." *Deckard v. Bunch,* 358 Or. 754, 765–66, 370 P.3d 478, 485–86 (2016) (citing *Black's Law Dictionary* 615 (10th ed. 2014) (internal quotation marks omitted)). "When a statute mandates a course of action, a duty is created." *Id.* (citation omitted). Here, the text of the statute may create a duty on the part of law enforcement officers to not use resources in a certain way. It does not, however, create a corresponding right on the part of Plaintiff. For example, the language of the statute does not

---

[6] The Court grants Plaintiff's motion to take judicial notice of the legislative history of ORS 181A.820. *See Territory of Alaska v. Am. Can Co.,* 358 U.S. 224, 226 (1959) (taking judicial notice of the legislative history of a bill); *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.,* 708 F.3d 1109, 1120 (9th Cir. 2013) (granting motion to take judicial notice of legislative history).

create a right for individuals to be free from conduct that involves the improper use of state law enforcement resources.

Finally, Plaintiff asks the Court to retroactively apply a 2021 amendment to ORS 181A.820. The amendment provides: "[a]ny person may bring a civil action against a law enforcement agency that violates subsection (2) or (3) of this section to <u>enjoin</u> the violation." ORS 181A.820(6) (emphasis added). The Court does not address Plaintiff's retroactivity argument because the amendment fails to provide the relief Plaintiff seeks. The amendment provides a cause of action for injunctive relief. Plaintiff seeks a declaratory judgment and money damages. Additionally, Plaintiff has not brought a claim under the statute but relies on ORS 181A.820 to establish negligence per se. This provision does not change the Court's analysis related to his negligence per se theory. The Court grant's Defendant's motion to dismiss Plaintiff's claim for negligence per se.

## CONCLUSION

The Court GRANTS Plaintiff's Request for Judicial Notice [15]. The Court GRANTS IN PART AND DENIES IN PART Defendant Washington County's Motion to Dismiss [6].

IT IS SO ORDERED.

DATED:   April 15, 2022   .

*Marco Hernandez*

MARCO A. HERNÁNDEZ
United States District Judge

15 – OPINION & ORDER